JERRY E. SMITH, Circuit Judge,
dissenting:
I respectfully dissent. The majority errs, primarily in light of Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The situation faced by the officers in Scott and the instant case are not different in any way that should make a difference. Scott is the clearly-established law that governs here for purposes of the qualified immunity analysis.
As the majority states, we base our analysis on the facts that are undisputed and on the disputed facts as alleged by the plaintiff. Majority op. at 408-09. The majority admits that Officer O’Donnell “would likely be entitled to qualified immunity” if, as he claims, “he fired as or immediately after the Taurus was backing up toward him.” Id. at 412. But Lytle contends, to the contrary, that, as the majority describes it, “the Taurus was three or four houses down the block when O’Donnell fired.” Id. at 408. The question is whether that disputed issue of fact — albeit genuine — is material. See id. at 408. It is not.
The majority goes astray in diminishing the importance of the threat to others, including not only the officers but also pedestrians, the occupants of vehicles, and even the occupants of nearby buildings. The majority errs in criticizing the fact that in his brief, O’Donnell “focus[es] entirely on the threat of harm.” Id. at 412.
In Scott, the Court, quite properly, focused on that threat — -on what it termed “the extreme danger to human life posed by [the suspect].” Scott, 550 U.S. 372, 127 S.Ct. 1769. Addressing the statement in Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that, under the Fourth Amendment, “the fleeing suspect must have posed an immediate threat of serious physical harm to the officer or others,” the Scott Court relied on the fact that “it was [the suspect’s] flight itself (by means of a speeding automobile)' that posed the threat of ‘serious physical harm ... to others.’ ” Scott, 550 U.S. at 382 n. 9, 127 S.Ct. 1769 (quoting Garner, 471 U.S. at 11, 105 S.Ct. 1694).
We return, therefore, to the question whether, accepting Lytle’s version of the facts, the threat to life and safety was sufficient to justify use of deadly force. The majority accurately sets forth
several factors that [O’Donnell] argues indicate the severity of the threat posed *419 by [the suspect’s] vehicle. There was, first, the threat of harm that the Taurus posed to O’Donnell himself as it was backing up toward him. Further, O’Donnell reasonably believed (1) that the driver of the Taurus was the same individual that was on bond for charges of felony theft and unlawfully carrying a weapon, and (2) that the driver was driving a stolen vehicle. O’Donnell also knew that the driver of the Taurus (1) had committed the felony of fleeing from a police officer, (2) had left a known drug location, (3) had led O’Donnell on a high-speed chase through a residential area with children playing somewhere nearby, (4) had collided with an occupied car while attempting to make a right turn, (5) had refused orders to stop, (6) had reversed the Taurus toward O’Donnell, and (7) was fleeing into the neighborhood.
Majority op. at 413.
For purposes of summary judgment, we cannot credit O’Donnell’s disputed claim that the Taurus was backing toward him. The other facts, however, are not contested, and they closely mirror the considerations addressed in Scott, in which the Court asked whether,
consistent with the Fourth Amendment, [an officer can] attempt to stop a fleeing motorist from continuing his public-endangering flight.... Put another way: Can an officer take actions that place a fleeing motorist at risk of serious injury or death on order to stop the motorist’s flight from endangering the lives of innocent bystanders?
Scott, 550 U.S. at 374, 127 S.Ct. 1769. The Court answered that question in the affirmative:
Deputy Scott did not violate the Fourth Amendment. ... [The suspect] posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase.... A police officer’s attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.
Id. at 381, 384, 386, 127 S.Ct. 1769.
The same result is called for here. It makes no difference if the dangerous suspect was three or four houses away instead of backing toward the officer. The obvious risk to the public was the same, as was the need for the officer to take action. The blame for the passenger’s death falls squarely on the suspect, not the officer, who had no intention of hitting an innocent occupant of the Taurus with his shot.
Officer O’Donnell did not violate the Fourth Amendment. We should not ask “whether another reasonable, or more reasonable, interpretation of the events can be constructed ... after the fact.” Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). O’Donnell is entitled to qualified immunity, because his “decision was reasonable, even if mistaken.” Id. at 229, 112 S.Ct. 534. His actions, despite their unfortunate and unintended consequences, were not unreasonable.
“[N]o reasonable jury could conclude otherwise.” Scott, 550 U.S. at 386, 127 S.Ct. 1769. I respectfully dissent.